UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **Jai Morin**, <br><br> Plaintiff; <br><br> v. <br><br> **Hannaford Bros. Co., LLC**, <br><br> Defendant. | Case No. 17-cv-00050-GZS |

**DEFENDANT'S PRETRIAL MEMORANDUM**

Defendant Hannaford Bros. Co., LLC, ("referred to as "Hannaford" or "Defendant") submits this pretrial memorandum in accordance with Local Rule 16.4. The following claims of Plaintiff Jai Morin remain in the case: disability discrimination under the MHRA and the ADA (Counts 1 and IV); failure to accommodate under the MHRA and ADA (Counts II and V); retaliation under the MHRA and ADA (Counts III and VI - as to punching in early); Interference under the FMLA and MFMLR (Counts VIII and IX).

**I.      Brief Statement of Defenses**

The following is the Statement of the Defenses, but Hannaford reserves the right to supplement its evidence and arguments based on the evidence that Plaintiff introduces at trial.

(A) Hannaford did not fail to accommodate Mr. Morin and Hannaford did not discriminate against him on the basis of his disability. Hannaford intends to present evidence and argument that Plaintiff cannot establish a *prima facie* case of disability discrimination because he is not a qualified individual under the ADA or the MHRA. A "qualified" individual is one "able to perform the essential functions of [her position] with or without reasonable accommodation." *Ward v. Mass. Health Research Inst., Inc.*, 209 F.3d 29, 33 (1st Cir. 2000). An essential function of his position as an assistant manager involves his ability to supervise department employees during the work day

and after 2:30 p.m. two days per week when the department manager is off. Working a schedule that starts earlier, before the store opens and before other employees have begun their day would relieve Plaintiff of the essential functions of customer service, employee supervision, and directing of work flow for a significant portion of the early morning shifts and deviates from the standard schedule for managerial personnel. Leaving at 2:30 p.m. would also leave the department without an assistant manager immediately preceding the busiest store hours, when leadership is most needed to direct work flow. Plaintiff's desire to work early in the morning and his inability to work past 2:30 pm precludes him from being able to perform the essential functions of his job as an assistant manager and thus he is unable to make out a prima facie case. *Richardson v. Friendly Ice Cream Corp.*, 594 F.3d 69, 78 (1st Cir. 2010) (assuming that overseeing that restaurant ran smoothly and supervising employees was an essential function of a manager position).

Hannaford will also present evidence and argue that the treatment of Plaintiff was lawful and for legitimate and nondiscriminatory reasons and that Plaintiff is unable to demonstrate that he was treated differently based on his disability.

Assuming that Mr. Morin demonstrates that he is a qualified individual with a disability, Hannaford will present evidence that the requested accommodation is not reasonable. The ADA does not require an employer to provide an accommodation that would create an undue hardship upon the business. 42 U.S.C. § 12112(b)(5)(A). In determining that Plaintiff's requested accommodation was unreasonable or would otherwise constitute an undue hardship, the Court follows a two-step analysis. *See Enica v. Principi*, 544 F.3d 328, 338 (1st Cir. 2008). First, the plaintiff must show "not only that the proposed accommodation would enable [him] to perform the essential functions of [his] job, but also that, at least on the face of things, it is feasible for the

employer under the circumstances." *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001). Second, the plaintiff "must prove that the request was sufficiently direct and specific so as to put the employer on notice of the need for an accommodation." *Enica*, 544 F.3d at 338, *citing Reed*, 244 F.3d at 261. If the plaintiff is able to satisfy these two elements, then the defendant may provide evidence that the "proposed accommodation was not feasible and would constitute an 'undue' hardship." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 23 (1st Cir. 2004), *citing Reed*, 244 F.3d at 261; *see also* 42 U.S.C. § 12112(b)(5)(A).  Hannaford intends to present evidence and argue that Plaintiff is unable to demonstrate the first required element and that even if he could make that showing, it is not feasible and an undue burden to limit an assistant manager to working no later than 2:30 p.m each day.   The ADA and the MHRC do not require Hannaford to shift the burden of later working hours and the performance of the essential functions of the assistant manager position upon other managers in those key hours immediately prior the busiest times of the shopping day.  *See Jones v. Walgreen Co.*, 679 F.3d 9, 20 (1st Cir. 2012) (rejecting argument that the ADA required employer to delegate tasks employee could not perform to other employees); *Feliciano v. State of R.I.*, 160 F.3d 780, 785 (1st Cir. 1998) (The ADA does not require reallocating essential functions to make other workers' jobs more onerous).  In addition, Hannaford intends to present evidence that Mr. Morin was approved for FMLA leave and was told that he could use the leave on "any" day whenever he needed to leave work because of his health condition.  In that context, Hannaford intends to argue that the provision of the FMLA leave in that manner and that response was a form of reasonable accommodation that satisfied its obligations under the ADA and the MHRA.

Hannaford also intends to present evidence and argue that Mr. Morin disengaged from the "interactive process" and essentially took the position that the only accommodation that he would

accept was the one that he proposed and he discounted and rejected Hannaford offers to him of alternative positions before and after a continuing dialogue with his doctor in an attempt to find an acceptable alternative to early departures. *See Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 104 (1st Cir. 2007); *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) ("[A]n employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer.").

(B) Hannaford did not interfere with Morin's rights under the FMLA and the MFMLR. Although Mr. Morin requested reduced schedule leave under the FMLA, he clearly testified that he was not looking for a reduced schedule, but rather a different schedule that would allow him to continue to work on a full time basis.  Under the FMLA, reduced schedule leave is a leave schedule that reduces an employee's usual number of working hours per week or per day. The regulations make this point clearly: "Intermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason.  A reduced leave schedule is a leave schedule that reduces an employee's usual number of working hours per workweek, or hours per work day.  A reduced leave schedule is a change in the employee's schedule for a period of time, normally from full-time to part-time." 29 CFR § 825.202(a).  In other words, while the FMLA provides for "time off" in the form of **leave**, Mr. Morin was not looking for any leave or any time off through his request for reduced scheduled leave … he simply wanted a different schedule.  There cannot be an interference claim under these facts because neither the FMLA nor the MFMLR provide for wholesale changes in full time schedules.

In addition, leave must be based on medical necessity. *See* 29 U.S.C. § 2612; 29 CFR § 825.306(a)(7); *Brown v. E. Maine Med. Ctr.*, 514 F. Supp. 2d 104, 109–10 (D. Me. 2007). The

4

medical necessity of leave is determined by reference to the medical certification form. *See* 29 CFR § 825.202(b)(1). "If an employee requests leave on an intermittent or reduced schedule basis for the employee's serious health condition . . . that may result in unforeseeable episodes of incapacity, [the medical certification must contain] information sufficient to establish the medical necessity for such intermittent or reduced schedule leave and an estimate of the frequency and duration of the episodes of incapacity." 29 CFR § 825.306(a)(7) (emphasis added).

Although the medical certification form contained a hand written recommendation that the Plaintiff should be allowed to leave by 2:30 p.m. each day, in response to the pivotal question on how frequently the condition would arise, the medical certification form unequivocally stated that the Plaintiff would have only one flareup per week for a duration of one day per episode and Mr. Morin agreed with the accuracy of that occurrence and duration. As a result, neither the medical certification form nor Mr. Morin's admitted testimony establish the medical necessity of limiting Plaintiff's workday to no later than 2:30 p.m. every single work day. Importantly, the burden of completing a medical certification form that supports the requested leave is on the employee. *See Henry v. United Bank*, 686 F.3d 50, 57 (1st Cir. 2012).

(C) Hannaford did not retaliate against Mr. Morin with respect to punching in early. Hannaford will present evidence and argument that the limitation on punching in early was applied by Mr. Morin's supervisor in a uniform manner to other employees, that management had legitimate and nondiscriminatory reasons for taking that action and that there was no connection between that action and any request by Mr. Morin for an accommodation. Finally, Mr. Morin is unable to show that his alleged protected conduct was the "but for" cause for the limitation on him punching in early. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009).

(D) Plaintiff is not entitled to punitive damages. Plaintiff cannot show that Hannaford acted "with malice or with reckless indifference to [his] federally protected rights." 42 U.S.C. § 1981a(b)(1); *see also Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534-35 (1999).

## II. Brief Statement of Contentions on Contested Points of Law and Evidentiary Questions

The following are perhaps mixed questions of law and fact and/or the application of law to the facts of this case. Out of an abundance of caution, however, they are presented below.

1. The discrimination claim is based on the alleged failure to accommodate. Although there is apparent agreement on this point and the Court approached the issue in this manner in its decision and order on the motion for summary judgment, for the purposes of the pretrial order, Hannaford respectfully requests that it be specifically addressed.

2. Plaintiff is not a qualified individual with a disability.

3. Plaintiff is unable to perform the essential functions of the position.

4. Plaintiff is unable to make out a prima facie case of discrimination, failure to accommodate or retaliation.

5. A change in the schedule of an assistant department manager as requested in this case is unreasonable and would constitute an undue burden.

6. Plaintiff did not have a right under the FMLA or MFMLR to a different full time schedule and therefore, there could not be a claim for interference based on a failure to provide a different full time schedule rather a reduced schedule.

7. The approval of intermittent FMLA leave and the authorization that the Plaintiff could use it as any time satisfies all obligations under the FMLA and MFMLR.

8. The provision of FMLA leave under the circumstances of this case constitutes the

provision of a reasonable accommodation.

9. Plaintiff is not entitled to emotional distress or punitive damages.

10. Submissions to the MHRC should not be admitted as evidence or referred to in this matter.

11. Statements by Dr. Dubocq on what he intended or was thinking when he completed the medical certification form should not be admissible.

12. Inventories and other documents and information reflecting the performance of the meat department should not be admissible.

Hannaford respectfully reserves the right to supplement and/or modify this list after receiving the submissions of Plaintiff.

### III. Stipulations

Defendant proposes that copies of documents may be used in lieu of originals.

### IV. Defendant's Witness List

Defendant's witness list is attached at Exhibit A.  Defendant's witness list does not include impeachment or rebuttal witnesses.  In addition, the disclosure of a witness on this list is not intended to represent that the witness will definitely be called at trial.  Defendant respectfully reserves the right to modify or supplement this List based on the witnesses and evidence Plaintiff presents at trial.

### V. Case Specific Juror Questionnaires

Not requested.

### VI. Defendant's Exhibit List

Defendant's Exhibit List is attached at Exhibit B. Defendant respectfully reserves the right to modify or supplement its Exhibit List based on the evidence presented by Plaintiff at trial.

DATED at Kennebunk, Maine this 2nd day of July, 2018.

    /s/ Timothy J. O'Brien
Timothy J. O'Brien, Esq. (Bar No. 3799)
Tyler J. Smith, Esq. (Bar No. 4526)
Attorneys for Defendant
Libby O'Brien Kingsley, LLC
62 Portland Road, Suite 17
Kennebunk, ME 04043
tobrien@lokllc.com
(207) 985-1815

## CERTIFICATE OF SERVICE

I, Timothy J. O'Brien, hereby certify that on this 2nd day of July, 2018, I filed this document with the U.S. District Court of Maine's ECF electronic filing system, which caused a copy of this document to be served electronically on all registered counsel of record.

    /s/ Timothy J. O'Brien
Timothy J. O'Brien, Esq. (Bar No. 3799)
Tyler J. Smith, Esq. (Bar No. 4526)
Attorneys for Defendant
Libby O'Brien Kingsley, LLC
62 Portland Road, Suite 17
Kennebunk, ME 04043
tobrien@lokllc.com
(207) 985-1815